UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDALL BURTCH,

            Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.
_____/

Case No. 07-14884

John Feikens
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 7, 8)**

**I.**    **PROCEDURAL HISTORY**

    A.    <u>Proceedings in this Court</u>

On November 14, 2007, plaintiff filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

John Feikens referred this matter to Magistrate Judge Steven D. Pepe for the

purpose of reviewing the Commissioner's decision denying plaintiff's claim for a

period of disability and disability insurance benefits. (Dkt. 2). On January 14

2008, this matter was reassigned to the undersigned. (Dkt. 3). This matter is

currently before the Court on cross-motions for summary judgment. (Dkt. 7, 8).

B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on October 14, 2003, alleging that he became unable to work on July 26, 1999.  (Dkt. 5, Transcript of Social Security Proceedings, at 53) ("Tr.").  The claim was initially disapproved by the Commissioner on March 5, 2004.  (Tr. at 42-46).  Plaintiff requested a hearing and on March 13, 2007, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Edward Steinman, who considered the case *de novo*.  In a decision dated March 30, 2007, the ALJ found that plaintiff was not disabled.  (Tr. at 16-22).  Plaintiff requested a review of this decision on April 5, 2007.  (Tr. at 9).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (Tr. at 6), the Appeals Council, on October 4, 2007, denied plaintiff's request for review.  (Tr. at 3); *Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 543-44 (6th Cir. 2004)*.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993); Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996)*.  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.     STATEMENT OF FACTS

### A.     ALJ Findings

Plaintiff was 45 years of age at the time of the most recent administrative hearing. (Tr. at 21). Plaintiff's relevant work history included approximately 20 years as a public safety officer and as a police detective, and he has 16 years of formal education. (Tr. at 16, 68). Plaintiff filed for disability insurance benefits on October 14, 2003, claiming that he had been disabled since July 26, 1999 due to hearing loss, back pain, and mental disorders. (Tr. at 17). The ALJ concluded that plaintiff had a combination of severe physical and mental impairments that result in significant work-related limitations. (Tr. at 17). And, while the plaintiff did not suffer from an impairment or combination of impairments that met or equaled the criteria set forth in the Listing of Impairments found in Regulation No. 4, Subpart P, Appendix 1, the ALJ concluded that plaintiff was unable to perform his past relevant work. (Tr. at 17). Despite his combined impairments and

resultant functional limitations, the ALJ concluded that plaintiff retained the

residual functional capacity to perform substantial gainful activity existing in

significant numbers in the economy and thus, was not disabled. (Tr. at 17).

The ALJ summarized the record medical evidence as follows:

> The claimant, who has complained of mental problems,
> was evaluated by a consulting clinical psychologist
> Robert Plummer, Ph.D., in October 2003 (Exhibit B-7F).
> The claimant denied any past psychotherapy, and Dr.
> Plummer found no evidence of significant dysfunction of
> the claimant's attention and concentration. Dr. Plummer
> diagnosed the claimant with a pain disorder, major
> depression recurrent, a post~traumatic stress disorder,
> and a personality disorder, not otherwise specified, with
> borderline and narcissistic features (Exhibit B-7F, p. 9).
> Dr. Plummer interpreted the claimant's test scores of the
> Minnesota Multiphasic Personality Inventory 2 as
> indicative or an individual who is seeking to draw
> attention to his plight by exaggerating his symptoms
> (Exhibit B-7F, p. 7). Citing the absence of any cognitive
> impairment Dr. Plummer estimated the claimant's
> intelligence to be at least average, and gave the claimant
> a current Global Assessment of Functioning of 55 to 65.
>
> A prior mental status evaluation conducted in 1999 by
> Dr. Claire Colman resulted in a diagnosis of an
> adjustment disorder of adult life with strong features of
> paranoia and concluded that the claimant is unable to
> work as a security guard (Exhibit B-5F). However, Dr.
> Coleman did not render an opinion of total or permanent
> disability due to mental illness.
>
> Dr. S. Nagarkar, a psychiatrist, who initially evaluated
> the claimant in December 2005, diagnosed him with

Report and Recommendation
Cross-Motions for Summary Judgment
*Burtch v. Comm'r*; 07-14884

major depression, single episode (Exhibit B-14F, p. 4).
Yet, Dr. Nagarkar found the claimant to be alert and
fully oriented with coherent and goal directed thinking.
Nor was there any evidence of a formal thought disorder,
and the claimant's insight and judgment were described
as good. The claimant was seen twice thereafter by Dr.
Nagarkar, who prescribed Lexapro for the claimant's
depressive symptoms (Exhibit B-14F, pp. 1 and 2).  The
claimant's primary problem was his fear or being sent
back to jail for nonsupport.  However, there was no
evidence of suicidal or homicidal ideation or psychotic
features.

Expert medical testimony was provided at the hearing by
Dr. Sidney Bolter, who is a board certified psychiatrist.
Dr. Bolter testified that, based on his review of the
evidence of record and the claimant's testimony, the
claimant has a personality disorder, a post-traumatic
stress disorder, a depressive disorder, not otherwise
specified, and a pain disorder, during the period of July
1999 to June 30, 2004.  Dr. Bolter also testified that
during the above-cited period, the claimant's combined
mental impairments resulted in moderate restriction of
his activities of daily living; moderate difficulties in
maintaining social functioning; and mild difficulties in
maintaining concentration, persistence or pace if limited
to simple, repetitive tasks in a nonpublic work setting
and minimal contact with coworkers and supervisors and
one or two episodes of decompensation.

(Tr. at 17-18).  Based on an independent review of the record evidence, the ALJ

found that the claimant could perform "simple, repetitive tasks in a nonpublic

work setting if he has only minimal contact with coworkers and supervisors."  (Tr.

at 18).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. at 21). At step two, the ALJ found that plaintiff's conditions of (1) back pain due to thoracic scoliosis and facet degenerative changes in the lower lumbar spine, (2) major depressive disorder, (3) post-traumatic stress disorder, (4) pain disorder, and (5) personality disorder were "severe" within the meaning of the second sequential step. *Id.* At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* At step four, the ALJ found that plaintiff could not perform any of his past previous work. *Id.* At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 22).

The ALJ determined that plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 22). The ALJ also concluded that plaintiff's claims were not entirely credible pursuant to Social Security Rulings 96-8p and 96-7p. This finding was based on the following:

> First, despite his complaints of severe back pain, the claimant has not undergone any back surgery or received a series of epidural steroid injections for pain relief.

> Second, nor did the claimant receive extensive medical

treatment for back pain during the period of July 1999 through June 2004.

Third, .... is there [no] evidence that, during the period of July 1999 through June 2004, the claimant was prescribed [or] used strong, narcotic pain relievers on a consistent basis.

Fourth, despite the claimant's mental problems, he had no psychiatric hospitalizations or emergency room treatment for a mental impairment prior to June 30, 2004. Prior to June 30, 2004, the claimant was found by Dr. Colman to be incapable of working as a security guard due to his adjustment disorder with strong paranoid features. However, Dr. Colman did not render an opinion of total or permanent disability due to any medically-determinable mental impairment.

Fifth, for 20 years, the claimant was able to work as a police officer, which required a medium level of exertion, despite his history of thoracic scoliosis.

Sixth, despite the claimant's complaint of anxiety attacks and other mental problems, at the hearing he acknowledged that he has not taken any psychotropic medications for over a year.

Seventh, the claimant's activities or daily living, as reported by him at the hearing, are consistent with the undersigned's assessment of his residual functional capacity. The claimant testified that he is able to drive an automobile, attends church, and prepares some meals.

(Tr. at 19-20).

Expert vocational testimony was provided at the hearing by Gloria Lasoff,

M.A. (VE), who reported that plaintiff had past relevant work experience as a police officer, which is a medium-duty occupation. (Tr. at 20). In response to a hypothetical question assuming the ALJ's assessment of the plaintiff's residual functional capacity, the VE testified that plaintiff was unable to perform his past relevant work. (Tr. at 20). Thus, the ALJ concluded that plaintiff established that he could not perform his past relevant work because of his impairments, and the burden shifted to the Social Security Administration to show that other jobs existed in significant numbers in the national economy that plaintiff could perform, consistent with his residual functional capacity, age, education and work experience. (Tr. at 20). In response to a hypothetical question assuming plaintiff's age, education, past relevant work experience, and the ALJ's assessment of the claimant's residual functional capacity, the VE testified that the claimant could perform at least 75 percent of the unskilled light jobs administratively noticed by the Commissioner of Social Security in Table No. 2 of Appendix 2 to Subpart P of Regulation No. 4. (Tr. at 20). Based on the VE's testimony, the ALJ concluded that, considering the claimant's age, educational background, work experience, and residual functional capacity, plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (Tr. at 20-21).

B.     Parties' Arguments

1.     Plaintiff's claims of error

On appeal to this Court, plaintiff raises two issues.  The first issue raised is whether the "Commissioner erred as a matter of law in failing to properly evaluate the medical opinions of record and thereby formed an inaccurate hypothetical that did not accurately portray [plaintiff's] impairments." (Dkt. 7, p. 6).  The second issue raised by plaintiff is whether the "Commissioner erred as a matter of law by failing to properly evaluate the 'severe' impairment of depression in accordance with 20 C.F.R. § 404.1520a and § 416.920a."  *Id*.  As noted above, because the ALJ determined that he could not return to his past relevant work, the burden of proof then shifted to the Commissioner to prove that plaintiff was capable, considering his age, education, and past work experience of engaging in other work.  (Dkt. 7, p. 6, citing, Tr. at 20-21, 20 C.F.R. § 404.1520(b)-(f)).  And, according to plaintiff, if the Commissioner seeks to rely on VE testimony to carry that burden of proof, the VE testimony must be given in response to a hypothetical question that accurately describes the claimant in all significant, relevant respects. (Dkt. 7, p. 7, citing, *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994)).

According to plaintiff, because each element of the ALJ's fourth hypothetical did not accurately describe plaintiff in all significant, relevant

respects, the VE's testimony at the hearing cannot constitute substantial evidence. *Id*. at 7. Specifically, plaintiff argues that the ALJ's hypothetical question is inconsistent with the Psychiatric Review Technique (PRT) form completed by Dr. Ronald Marshall, who concluded that plaintiff had a "mild" limitation with respect to activities of daily living and maintaining social functioning, but that he had "moderate" difficulties in maintaining concentration, persistence, or pace. (Dkt. 7, pp. 8, 10-11, citing, Tr. 169, 173-174). Plaintiff further faults the ALJ because he failed to explain why he "deviated" from Dr. Marshall's opinion, which, according to plaintiff, is contrary to the requirement in Social Security Ruling 96-8p that a residual functional capacity assessment must "include a resolution of any inconsistencies in the evidence as a whole." (Dkt. 7, pp. 8, 10). Plaintiff argues that the ALJ failed to identify any reasons for discounting the opinion of Dr. Marshall, who he claims is a treating physician. *Id*. at 10. According to plaintiff, the only hypothetical that led to jobs, which was the basis of the decision denying benefits, was the fourth hypothetical dealing with the DDS Physical Residual Functional Capacity (RFC) Assessment form and Dr. Bolter's opinion that "plaintiff could do simple, repetitive tasks, non-public, minimal contact with peers and supervisors." (Dkt. 7, p. 11, citing, Tr. 242). According to plaintiff, Dr. Bolter's opinion was contrary to Dr. Marshall's opinion, which was given prior to

the date last insured and based on the medical records of evidence available and dealing with the period before June 2004, the date last insured. (Dkt. 7, p. 11). Plaintiff asserts that the ALJ's failure to analyze or rationalize the inconsistency is error. *Id*.

Plaintiff also points to his own testimony to support his claim that Dr. Marshall correctly concluded that he had "moderate" difficulties in maintaining concentration, persistence, or pace. (Dkt. 7, p. 11). Plaintiff suggests assigning a 20 percent value to the "moderate," concluding that a person would be unable to be productive at least 20 percent of the work week as a result of a moderate deficiency in concentration, persistence, or pace, which would equate to one day per week and would be work preclusive, based on the VE's testimony that the maximum allowable absences per month for competitive employment is one or two. (Dkt. 7, p. 13, citing, Tr. at 244). The VE also confirmed that work would be precluded if a person were unable to perform activities within a schedule, unable to maintain regular attendance, and unable to be punctual within customary tolerances. *Id*.

However, the ALJ concluded that, "based on an independent review of the evidence of record, the undersigned accepts and adopts the state agency medical consultant's assessment of the claimant's physical [RFC]." (Dkt. 7, p. 15, citing,

Tr. at 19). Plaintiff argues that it appears that the Physical RFC Assessment form was completed by an "enhanced examiner" rather than a medical doctor because no medical consultant code is given and the signature is above the box in which the medical consultant is supposed to sign. (Dkt. 7, p. 15, citing, Tr. at 184).[2] Plaintiff also claims that the ALJ failed to properly evaluate plaintiff's testimony under 20 C.F.R. § 404.1529(c) and SSR 96-7p.

The second issue raised by plaintiff is whether the "Commissioner erred as a matter of law by failing to properly evaluate the 'severe' impairment of depression in accordance with 20 C.F.R. § 404.1520a and § 416.920a." Under 20 C.F.R. § 404.1520a(d)(3), if the Commissioner concludes "that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity." According to plaintiff, the ALJ opined that plaintiff had the "severe" impairment of a major depressive disorder, a post-traumatic disorder, a pain disorder and a personality disorder and further opined that there was no Listing 12 met nor medically equaled. (Dkt. 7, p. 17, citing, Tr. at 17, 21). Thus, according to plaintiff, the ALJ failed to assess the

---

[2] Plaintiff does not offer any record evidence, other than his own testimony, to support his apparent claim that the Physical RFC Assessment inaccurately reflects his physical limitations. And, and discussed below, there is no basis to disturb the credibility findings made by the ALJ.

depression in relationship to the residual functional capacity. While the ALJ

discussed Dr. Bolter's opinion regarding moderate limitations in activities of daily

living and maintaining social functioning and mild limitation in maintaining

concentration, persistence or pace, according to plaintiff, the ALJ failed to discuss

the opinion of Dr. Marshall, failed to rationalize the difference between the two

opinions, and failed to explain why his decision was at odds with Dr. Marshall's

opinion. (Dkt. 7, pp. 17-18, citing, Tr. at 18, 169, 173-174). Plaintiff asserts that

the ALJ also failed to set forth his final decision with respect to 20 C.F.R.

§ 404.1520a(c)(3) and failed to properly evaluate the "severe" impairment of

depression in accordance with § 404.1520a and § 416.920a. (Dkt. 7, p. 18).

> 2.   Commissioner's counter-motion for summary judgment

The Commissioner asserts that the ALJ reasonably concluded that plaintiff

could perform light work that precluded climbing of scaffolds; required other

postural maneuvers only occasionally; and, involved simple, repetitive tasks in a

nonpublic work setting with minimal contact with coworkers and supervisors.

(Dkt. 8, citing, Tr. at 19). According to the Commissioner, based on the VE's

testimony, the ALJ reasonably concluded that plaintiff's RFC allowed him to

perform a significant number of jobs in the economy and that he was, therefore,

not disabled. (Dkt. 8, citing, Tr. at 20-22). The Commissioner disputes plaintiff's

argument that the ALJ should have found plaintiff to be disabled because the State

Agency reviewing psychologist, Dr. Marshall, opined that plaintiff was

moderately limited in concentration, persistence, or pace. (Dkt. 8). The

Commissioner disputes plaintiff's position because Dr. Marshall specifically

opined that, despite his limited abilities in that area of functioning, plaintiff could

perform unskilled tasks on a repetitive basis. (Dkt. 8, citing, Tr. at 171).

Moreover, the Commissioner asserts that the testifying medical expert's testimony

was actually consistent with Dr. Marshall's opinion, given his recommendation

that plaintiff was limited to simple tasks and his finding that plaintiff was able to

perform simple repetitive tasks in non-public settings with minimal contact with

supervisors. (Dkt 8, citing, Tr. at 238). According to the Commissioner, the ALJ

properly incorporated these limitations into his RFC finding, and the vocational

expert testified that an individual with those limitations could perform hundreds of

thousands of jobs. (Dkt. 8, citing, Tr. at 242-43). The Commissioner argues,

therefore, that the ALJ's evaluation of plaintiff's mental impairments was

reasonable, consistent with the law, and should not be disturbed.

The Commissioner also disputes plaintiff's claim that the ALJ did not

adequately address his physical limitations. According to the Commissioner, Dr.

Sankaran's consultative examination from December, 2003 found little evidence

suggestive of significant limitation in plaintiff's ability to do work-related activities, which was consistent with Dr. Akbar's 2001 examination that failed to reveal any condition significant enough to cause "any pain or discomfort." (Dkt. 8, citing, Tr. 142). The Commissioner suggests that Dr. Small's opinion[3] regarding plaintiff's limited ability to perform basic physical tasks is undermined by his statement that plaintiff had always been so limited, which is clearly not consistent with plaintiff's actual work history as a police officer. (Dkt. 8, citing, Tr. 210). The Commissioner asserts that the ALJ correctly declined to give Dr. Small's opinion significant or controlling weight because it was not well-supported by the medical evidence and not consistent with substantial other evidence of record. (Dkt. 8, citing, Tr. 21); *see also* [20 C.F.R. § 404.1527(d)(2)](controlling weight given to treating physician opinion if well-supported by medically acceptable objective evidence and not consistent with the substantial record evidence). According to the Commissioner, Dr. Small did not rely on any significant objective clinical examination findings, and seemingly based his assessment solely on plaintiff's subjective complaints. The Commissioner asserts that the ALJ's decision to give little weight Dr. Small's opinion is consistent with

---

[3] In his motion for summary judgment, plaintiff did not object to the ALJ's assessment of Dr. Small's opinion. Thus, this is not an issue in the instant appeal.

*McCoy o/b/o McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), in which the Sixth

Circuit concluded that an ALJ reasonably discounted the opinion of a treating

physician where it was based on the claimant's subjective complaints, as opposed

to objective medical evidence.

Finally, the Commissioner argues that plaintiff's disagreement with the

ALJ's credibility assessment fails to point to any legitimate basis for usurping the

ALJ's role as finder of fact and substituting a new credibility analysis for that of

the ALJ. (Dkt. 8). Given that the ALJ credibility determinations are entitled to

great deference and are based on personal observation of a witness's demeanor,

the Commissioner argues that plaintiff has failed to provide any basis for rejecting

the ALJ's conclusion. (Dkt. 8, citing, *Casey v. Secretary of Health and Human

Services*, 987 F.2d 1230, 1234 (6th Cir. 1993)).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may...consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

*F.3d 532, 542 (6th Cir. 2007)* (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters, 127 F.3d at 531* ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers, 486 F.3d at 247*, quoting, *Soc. Sec.*

*Rul. 96-7p, 1996 WL 374186, *4*.

   If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  *42 U.S.C. § 405(g)*.  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec., 474 F.3d 830, 833 (6th Cir. 2006)*; *Mullen v. Bowen, 800*

*F.2d 535, 545 (6th Cir. 1986) (en banc)*.  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Rogers, 486*

F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

1.    Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits...physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

 2. Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider

relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole.  20 C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight."  Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record."  Wilson, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating

physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted).  "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).  The findings of a psychologist are relevant in establishing the existence and severity of a mental impairment, and a psychologist's evaluation of the disabling nature of a mental impairment need not be given less weight than that of a psychiatrist.  *Crum v. Sullivan*, 921 F.2d 642 (6th Cir. 1990).

     C.     <u>Analysis and Conclusions</u>

          1.     Residual Functional Capacity Assessment, the Hypothetical Question, and the Credibility Assessment

The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir.

2002).  "A claimant's severe impairment may or may not affect his or her functional capacity to do work.  One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004).  "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).  Not all impairments deemed "severe" in step two must be included in the hypothetical.  *Griffeth*, 217 Fed.Appx. at 429.  "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005).  The ALJ  is only required to incorporate the limitations that he finds credible.  *Casey*, 987 F.2d at 1235.  This obligation to assess credibility extends to the claimant's  subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476.  When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in

resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ ultimately determined that plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 22). "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). In reaching this conclusion, the ALJ first found that plaintiff's "back pain due to thoracic scoliosis and facet degenerative changes in the lower lumbar spine, a major depressive disorder, a post-traumatic stress disorder, a pain disorder and a personality disorder" are considered "severe" based

on the requirements in the [20 C.F.R. § 404. 1520(c)](). (Tr. at 21). The ALJ then found that these medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix I, Subpart P, Regulation No. 4. (Tr. at 21). Based on the fourth hypothetical question presented to the VE, the ALJ then concluded that plaintiff had the residual functional capacity to perform a significant range of light work, although his limitations would not allow him to perform the full range of light work. (Tr. at 22). That hypothetical is as follows:

> Q Fourth hypothetical is Dr. Bolter's analysis (INAUDIBLE) saying he could do simple, repetitive tasks, non-public, minimal contact with peers and supervisors. Add to that the DDS assessment in B-10F. There would be no prior work?
>
> A Correct.
>
> Q Of the 1,600 light, unskilled job titles in the grid (INAUDIBLE) with these limitations?
>
> A At least 75 percent.

(Tr. at 242). The ALJ also posed a hypothetical to the VE, based on plaintiff's self-stated limitations:

> Q Thank you, and the next hypothetical which will be number five is the claimant's limitation. He says he gets excruciating pain if he turns the wrong way lifting a pencil. He can sit for 20 minutes, stand for 20 minutes. He claims he needs to use a walker at home for -- every other day, three times a day, ten minutes to a half and a

> half at a time. (INAUDIBLE) he naps two to three days a
> week. The duration is one to two hours. He doesn't
> believe he can work full time. There would be no work,
> either prior work or other work?
>
> A Correct.

(Tr. at 243-244).

The propriety of the fourth hypothetical is intertwined with the ALJ's

credibility assessment. Plaintiff argues that the ALJ failed to include all of Dr.

Marshall's stated limitations and failed to give plaintiff's testimony sufficient

weight. The ALJ acknowledged that plaintiff had an impairment that could cause

limitations; however, he found that the severe and debilitating nature of plaintiff's

limitations were not fully credible and provided seven reasons for his conclusion.

The issue is whether the ALJ's credibility determinations are supported by

substantial evidence. Plaintiff objects to the ALJ's first reason ("despite his

complaints of severe back pain, the claimant has not undergone any back surgery

or received a series of epidural steroid injections for pain relief") and the sixth

reason ("despite the claimant's complaint of anxiety attacks and other mental

problems, at the hearing he acknowledged that he has not taken any psychotropic

medications for over a year") because plaintiff testified that he did not have any

insurance. (Dkt. 7, pp. 15-16). However, it is unclear from the record whether

and when plaintiff had medical insurance. For example, plaintiff asserted in his application for benefits dated September 15, 2003 that he had no insurance coverage (Tr. at 70, 75), but in July 2006, his treatment records show that he was covered under Blue Cross Blue Shield. (Tr. at 198). At the hearing in March, 2007, plaintiff testified that he did not have any insurance and this is why he had not sought regular psychiatric treatment since February, 2006 and had not seen an orthopedist or neurologist for his back pain. (Tr. at 224, 226-227). However, plaintiff was treated by Dr. Small, including having blood work done and being prescribed medications in June, July, and October, 2006. (Tr. 197-199). Thus, the record shows that plaintiff had insurance during some periods of time at issue and he has not shown that a lack of insurance has impaired his ability to obtain treatment. This conclusion is supported by plaintiff's failure to object to the second reason that the ALJ discounted his testimony ("nor did the claimant receive extensive medical treatment for back pain during the period of July 1999 through June 2004.").

Plaintiff objects to the third basis offered by the ALJ for discounting plaintiff's testimony ("there [is no] evidence that, during the period of July 1999 through June 2004, the claimant was prescribed [or] used strong, narcotic pain relievers on a consistent basis."). Plaintiff cites the transcript at 191, 194, 195,

144, and 154 to dispute the ALJ's conclusion. These records show that plaintiff
was prescribed Naprosyn in February 2001, Naprosyn and a limited amount of
Darvocet in March 2003, and a limited amount of Darvocet in December 2004.
Moreover, Dr. Small noted that plaintiff merely used Darvocet "as needed" for
back pain. (Tr. at 199). The undersigned cannot say that this evidence contradicts
the ALJ's conclusion that the claimant did not use "strong, narcotic pain relievers
on a consistent basis" between July 1999 and June 2004.[4]

Plaintiff disputes the fifth reason stated by the ALJ ("for 20 years, the
claimant was able to work as a police officer, which required a medium level of
exertion, despite his history of thoracic scoliosis"), claiming that scoliosis can
worsen over time. However, the medical evidence in the records suggest that, in
March, 2001, while some facet degenerative changes in the lower lumbar spine
were noted, the scoliosis was "not significant enough to cause pain/discomfort."
(Tr. at 142). Moreover, plaintiff's "psychological reports indicate that he may be
exaggerating his physical complaints to draw attention to his problems." (Tr. at
182). And, it was found that plaintiff's "statements regarding his physical
limitations are not fully credible." *Id*. In his psychological evaluation, Dr.

---

[4] Plaintiff's objections to the fourth reason stated by the ALJ are discussed
elsewhere.

Plummer wrote that plaintiff told him to "just please approve me so I can get money...." (Tr. at 143). Other treating physicians also reported that plaintiff sought to be "off-work" when it was not necessarily warranted. *See e.g.*, (Tr. at 190) ("Pt. Wants Dr. Lee to change excuse slip - wants it to say 'is incapacitated' not 'was incapacitated' on slip. Pt told no."); (Tr. at 194) ("Pt. wants off work slip to use for the court."). Thus, the ALJ's conclusion that plaintiff's work history belied the severity of his limitations is supported by the record.

Plaintiff also asserts that the ALJ's seventh reason for discounting plaintiff's testimony does not make sense. (Dkt. 7, p. 16). The ALJ's seventh stated reason was "the claimant's activities of daily living, as reported by him at the hearing, are consistent with the undersigned's assessment of his residual functional capacity. The claimant testified that he is able to drive an automobile, attends church, and prepares some meals." Plaintiff asserts that his testimony at the hearing does not "even come close to being consistent with light work." (Dkt. 7, p. 16). As discussed in great detail above, the ALJ found plaintiff's credibility to be quite lacking for multiple reasons, and declined to adopt hypothetical five, which incorporated all of plaintiff's stated limitations. The undersigned does not believe that the ALJ, by concluding that plaintiff's activities of daily living were consistent with the RFC assessment (that plaintiff could perform a limited range of

light work), somehow accepted all of plaintiff's testimony regarding his activities and limitations. A more logical and consistent construction of the ALJ's statement is that he concluded that the activities reported by plaintiff, as delineated in his seventh reason ("The claimant testified that he is able to drive an automobile, attends church, and prepares some meals"), were consistent with his RFC assessment.

Based on the foregoing, it is clear that the ALJ, based on the opinion of the testifying medical expert, found that Dr. Marshall's opinion that plaintiff suffered from a moderate limitation in concentration, persistence, or pace was based solely on plaintiff's self-reported limitations. Having found those self-reported limitations to be not entirely credible and not consistent with the medical evidence in the record, the ALJ properly concluded that plaintiff's restrictions as to concentration, persistence, or pace were, at best, mild. The undersigned concludes that the ALJ properly rejected Dr. Marshall's finding of a "moderate" impairment of concentration, persistence, or pace in favor of Dr. Bolton's finding of a mild impairment. In all other respects, the fourth hypothetical posed to the VE reflected plaintiff's limitations as set forth in Dr. Marshall's PRT. In light of the medical evidence discussed above, I suggest that the VE's opinion is consistent with the findings of treating physicians and mental health professionals, and can properly

be considered substantial evidence supporting the ALJ's findings. *See Sias v. Sec'y of Health & Human Servs., 861 F.2d 475, 481 (6th Cir. 1988)*; *Hardaway v. Sec'y of Health & Human Servs., 823 F.2d 922, 927-28 (6th Cir. 1987)*; *Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987)*. Thus, the undersigned concludes that there is an insufficient basis on this record to overturn the ALJ's credibility determination and that the hypothetical relied on properly reflected plaintiff's limitations.

Finally, plaintiff argues by analogy to *Bankston v. Comm'r of Soc. Security, 127 F.Supp.2d 820 (E.D. Mich. 2000)*, that "moderate" in Dr. Marshall's assessment is equivalent to "often" under the Commissioner's prior regulations in effect at the time *Bankston* was decided. The viability of the *Bankston* decision, has been repeatedly questioned as contrary to the Commissioner's Psychiatric Review Technique form instructions and the principle of deference to an administrative agency's construction of its own regulations. *Benton v. Comm'r of Social Security, 511 F.Supp.2d 842, 847 (E.D. Mich. 2007)*; *Ogden v. Apfel*, Case No. c-3-00448 (S.D. Ohio 2001) (suggesting that *Bankston* is simply wrong because it ignores the Commissioner's interpretation of "often" in the regulations). *Bankston* correctly notes that a "hypothetical question must consider the severity – including the degree and/or frequency – of the claimant's concentration

problems." *Benton*, 511 F.Supp.2d at 847. However, the *Benton* court rejected the plaintiff's assertion that the ALJ must apply a "formulaic 50% reduction in concentration to Plaintiff based solely on his finding of a moderate limitation in concentration, persistence, and pace." *Id.* Since *Bankston*, C.F.R. 404.1520a(c)(4) has been amended to encompass a five-level scale based on severity rather than frequency of the limitation, as set forth in the scale evaluated in *Bankston*. *Brewer v. Comm'r of Social Security*, 2008 WL 719228, *5 (E.D. Mich. 2008). This Court has previously concluded that to the extent *Bankston* was good law under the old version of § 404.1520a, it is simply inapplicable to the current regulation. *Id.* Moreover, because I concluded above that the ALJ properly relied on Dr. Bolton's opinion that plaintiff only suffered from a "mild" impairment of concentration, persistence, or pace, plaintiff's argument that a "moderate" impairment equates to disability based on *Bankston* is entirely moot.

2.     Mental Impairment

As to an allegedly disabling mental impairment, the Commissioner has promulgated a special technique to ensure that all evidence needed for the evaluation of such a claim is obtained and evaluated. This technique was designed to work in conjunction with the sequential evaluation process set out for the evaluation of physical impairments. 20 C.F.R. §§ 404.1520a, 416.920a. Congress

laid the foundation for making disability determinations when mental impairments

are involved in 42 U.S.C. § 421(h), which provides:

> An initial determination under subsection (a), (c), (g), or
> (I) of this section that an individual is not under a
> disability, in any case where there is evidence which
> indicates the existence of a mental impairment, shall be
> made only if the Commissioner has made every
> reasonable effort to ensure that a qualified psychiatrist or
> psychologist has completed the medical portion of the
> case review and any applicable residual functional
> capacity assessment.

Section 404.1520a explains in detail the special procedure and requires the

completion of "a standard document outlining the steps of this procedure." 20

C.F.R. § 404. 1520a(d). The regulation further requires the standard document to

be completed and signed by a medical consultant at the initial and reconsideration

levels, but provides other options at the administrative law judge hearing level. *Id.*

Under this procedure, the Commissioner must first make clinical findings, as to

whether the claimant has a medically determinable mental disorder specified in

one of eight diagnostic categories defined in the regulations. *Merkel v. Comm'r of

Social Security*, 2008 WL 2951276, *10 (E.D. Mich. 2008), citing, 20 C.F.R. Pt.

404. Subpt. P, App. 1, § 12.00A.

 The Commissioner must then measure the severity of any mental disorder;

that is, its impact on the applicant's ability to work. "This is assessed in terms of a

prescribed list of functional restrictions associated with mental disorders."

*Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first

area of functional restriction is "activities of daily living." This area requires the

Commissioner to determine the claimant's ability to clean, shop, cook, take public

transportation, maintain a residence and pay bills. *Merkel*, at *10. Under the

second functional area, "social functioning," the Commissioner must determine

whether the claimant can interact appropriately and communicate effectively and

clearly with others. *Id.* The third functional area, "concentration, persistence, or

pace," refers to the claimant's ability to sustain focused attention sufficiently long

to permit the timely completion of tasks found in work settings. *Id.* The final

functional area, that of "deterioration or decompensation in work or work-like

settings," refers to the claimant's ability to tolerate increased mental demands

associated with competitive work. *Id.*

The degree of limitation in the first three functional areas (activities of daily

living; social functioning; and concentration, persistence, or pace) is rated using a

five-point scale: None, mild, moderate, marked, and extreme. *Pauley v. Comm'r

of Social Security*, 2008 WL 2943341, *9 (S.D. Ohio 2008). The degree of

limitation in the fourth functional area (episodes of decompensation) is rated using

a four-point scale: None, one or two, three, four or more. *Id.* "The last point on

each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(c)(4). Ratings above "none" and "mild" in the first three functional areas and "none" in the fourth functional area are considered severe. *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(d)(1). If the first two functional areas receive ratings of "none" or "slight," the third a rating of "never" or "seldom," and the fourth a rating of "never," the Commissioner will conclude that the mental impairment is not severe, and that it cannot serve as the basis for a finding of disability. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(1), 404.1521.

If the functional areas indicate that the mental impairment is "severe," the Commissioner must decide whether it meets or equals a listed mental disorder. *Merkel*, at *10, citing, 20 C.F.R. § 1520a(c)(2). The Commissioner will determine that the claimant is disabled if the mental impairment is a listed mental disorder and at least two of the criteria have been met. *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02, *et. seq.* If the severe mental impairment does not meet a listed mental disorder, the Commissioner must perform a residual functional capacity assessment to determine whether the claimant can perform some jobs notwithstanding his mental impairment. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

Plaintiff's PRT (Tr. at 159-172) shows that he suffered from an "affective disorder" identified as "MDD, current, moderate." (Tr. at 162). It also shows that he suffered from PTSD, an anxiety-related disorder (Tr. at 164), a somatoform pain disorder (Tr. at 165), and a personality disorder. (Tr. at 166). With respect to the four areas of functional limitation, the PRT showed that plaintiff was mildly limited in the areas of activities of daily living and social functioning, and moderately limited in maintaining concentration, persistence, or pace. (Tr. at 169). The medical expert who testified at the hearing concluded that plaintiff was only mildly limited as to concentration, persistence, or pace because the conclusion in the PRT appeared to be based solely on plaintiff's complaints and no significant dysfunction in attention and concentration was evidenced. (Tr. at 240). Additionally, the mental residual functional capacity assessment showed that plaintiff was "moderately limited" in the areas of "ability to understand and remember detailed instructions," the "ability to carry out detail instructions," the "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and the "ability to respond appropriately to changes in the work setting." (Tr. at 173-174). According to the medical expert who testified at the hearing, even with these moderate limitations, plaintiff would be able to perform simple tasks. (Tr. at 240-241).

Plaintiff's primary complaint is, again, that the ALJ failed to reconcile the opinion of Dr. Marshall – a treating physician – with the opinion of Dr. Bolter and failed to sufficiently state a reason for "rejecting" the opinion of a treating physician. (Dkt. 7, pp. 17-18). While plaintiff repeatedly refers to Dr. Marshall as a "treating physician," there is no evidence in the record suggesting that Dr. Marshall ever examined or treated plaintiff except on that one occasion in February, 2004. Rather, Dr. Marshall was the consultant who completed the PRT. (Tr. at 171). A physician qualifies as a treating source if the claimant sees him "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Treating" professionals are those who can, by virtue of having provided treatment over a course of time, provide a "detailed longitudinal picture" of a claimant's impairments. 20 C.F.R. § 404.1527(d)(2). The perspective of a "treating" professional is generally considered unique and one that cannot be obtained "from the objective medical findings alone or from reports of the individual examinations such as consultative examinations or brief hospitalizations." *Id.* Dr. Marshall falls squarely into the category of "consultative examination," not "treating" medical professional. As set forth above, Dr. Marshall's opinion that plaintiff was moderately limited as to

concentration, persistence, or pace is the only portion of his opinion with which Dr. Bolter and the ALJ disagreed. This conclusion was based on the extensive and well-supported credibility determinations made by the ALJ. Thus, there is substantial evidence in the record to support the ALJ's conclusion.

After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not exceed 20 pages in length unless such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections by motion and order. If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

s/Michael Hluchaniuk
Date: November 18, 2008          Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on <u>November 18, 2008,</u> I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: <u>Mikell E. Lupisella, Judith Levy, AUSA, and Commissioner of Social Security</u>, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>not applicable</u>.

s/James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov
